UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| Leslie Anne Brandt aka Leslie Anne Chladny<br>c/o Kimberly A. Wright, Esq.<br>100 Executive Drive, Suite E<br>Lafayette, IN 47905<br><br>     Plaintiff(s)<br>v.<br><br>Rushmore Loan Management Services LLC<br>2711 Centerville Road<br>Wilmington, DE 19808<br><br>AND<br><br>Specialized Loan Servicing<br>8742 Lucent Boulevard, Suite 300<br>Highlands Ranch, CO 80129-2386<br><br>     Defendants(s) | Case No.<br><br>Judge<br><br>Magistrate<br><br>**COMPLAINT FOR MONEY AND JURY DEMAND** |

## INTRODUCTION

1. This is an action by Plaintiff Leslie A. Brandt f.k.a. Leslie A. Chladny ("Plaintiff") against Defendants Rushmore Loan Servicing LLC ("Rushmore") and Specialized Loan Servicing LLC ("SLS") (and collectively "Defendants") for statutory damages, actual damages, and punitive damages for the Defendants' violations of the Real Estate Settlement Procedures Act (12 U.S.C. §2601, *et seq.*), the Fair Debt Collection Practices Act (15 U.S.C. § 1692, *et seq.*), violations of the United States Bankruptcy Code (11 U.S.C. 101, *et seq.*) and for violations under Indiana Law for Breach of Contract and Conversion.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1332.

3. Venue in this District is proper in that each Defendant transact business in this District and the conduct complained of occurred in this District.

## PARTIES

4. Plaintiff Leslie Brandt f.k.a. Leslie Chladny is a natural person residing in the City of Lafayette, County of Tippacanoe, State of Indiana and is the owner of the real estate located at 900 Stoneripple Circle, Lafayette, Indiana. At all times relevant in this Complaint, Plaintiff resided at this location. The Plaintiff is a "Consumer" and a "Plaintiff" as those terms are defined under the application Federal and State Statutes.

5. Co-Defendant Rushmore is a limited liability company incorporated under the laws of the State of Delaware that maintains its principal place of business at 2711 Centerville Road, Wilmington, DE 19808. Upon belief Rushmore acts as a mortgage servicer in various states including servicing mortgages for citizens of Indiana.

6. Co-Defendant SLS is a limited liability company incorporated under the laws of the State of Delaware that maintain its principal place of business at 8742 Lucent Boulevard, Suite 300, Highlands Ranch, CO 80129-2386. Upon belief SLS acts as a mortgage servicer in various states including servicing mortgages for citizens of Indiana.

7. Upon belief both Rushmore and SLS are "debt collectors" as that term is defined in the FDCPA as both Rushmore and SLS began servicing the Plaintiff's mortgage loan at a time of default. SLS additionally is a debt collector as at all times relevant therein to their servicing, SLS has explicitly and impliedly acted as a debt collector in regards to all correspondence between SLS and the Plaintiff.

8. At all relevant times, both Rushmore and SLS conducted business as a "mortgage servicer" as that phrase is defined by the Real Estate Settlement Procedures Act.

**FACTUAL ALLEGATIONS**
**(Chapter 13 Bankruptcy July 2011 – August 2013)**

9. The Plaintiff reincorporates all allegations stated above as if fully contained herein.

10. The Plaintiff was the Debtor in Chapter 13 Bankruptcy Case No. 11-40603-reg filed in the United States Bankruptcy Court, Northern District of Indiana, Hammond Division at

2

Lafayette on July 27th, 2011.  The Chapter 13 Plan was confirmed on November 28th, 2012 and the Plaintiff received her discharge under 11 U.S.C. § 1327 on August 9th, 2013.  A copy of the docket from the Bankruptcy Court is attached as Exhibit A.

11. At the time of the filing of the Complaint, the Plaintiff had a first mortgage which was held at that time by Arch Bay Holdings LLC which the Plaintiff duly listed on her Bankruptcy Schedules.

12. On or about October 8th, 2012, Arch Bay, the Debtor, and the Chapter 13 Trustee David A. Rosenthal entered into "Joint Stipulation for Immaterial Agreement or Settlement Pursuant to Loss Mitigation Order" which is attached as Exhibit B.  Pursuant to the Stipulation and loan modification entered between Arch Bay and the Debtor:

   a. The interest rate was reduced to 6%

   b. Interest in the sum of $42,536.52 was forgiven

   c. As of November 1st, 2012, the Plaintiff's Mortgage payment would be $1,448.08 which consisted of payments of $1,140.23 principal and interest plus $307.85 escrow.

   d. By November 1st, 2012, the Chapter 13 Trustee would tender payments of $2,149.08 made by the Debtor during the pendency of the Chapter 13 case at that time to Arch Bay via SLS which consisted of payments to the following:

       i. Principal and interest

       ii. A Modification Fee

       iii. Estimated Escrow Payment

       iv. And required cash contribution

13. Upon information and belief, the Chapter 13 Trustee tendered the payment before November 3rd, 2012.

14. At some point following the joint stipulation, the servicing of Plaintiff's loan transferred from SLS to Rushmore. Upon belief based upon the bankruptcy docket, the servicing transfer occurred before June 4th, 2013 based upon the Notice of Transfer of Claim filed by Arch Bay.

15. From December 2012 through July 2013, the Chapter 13 Trustee disbursed $10,938.33 to Rushmore. This amount was the equivalent of eight (8) monthly mortgage payments of $1,448.08 less $646.31. The $646.31 balance of July 1st, 2013's mortgage payment was tendered directly by Plaintiff to Rushmore on or about July 2nd, 2013.

16. On or about July 8th, 2013, the Trustee filed his Notice of Final Cure Payment.

17. On or about July 30th, 2013 the current owner of the Note and Mortgage at that time, US Bank, N.A. as Trustee for RMAC Trust, Series 2013-1T filed its response to the Notice acknowledging both that the Plaintiff had satisfied all pre-and-post-petition liabilities and the Trustee had maintained all payments required through the Chapter 13 Plan. A copy of this response is attached as Exhibit C.

18. The Plaintiff was discharged from her Chapter 13 Bankruptcy on or about August 9th, 2013.

### (Rushmore's Servicing Post Discharge through December 9th, 2015)

19. Delighted to be discharged and based upon the Notice of Final Cure Response, the Plaintiff began tendering monthly payments directly to Rushmore in the amount of $1,448.08 for the months of August, September, October, and November 2013. All four payments were sent by certified mail with return receipt.

    a. August 2013 payment, in the sum of $1,448.08, sent via certified mail, return receipt on July 26, 2013 and signed for by a representative of Rushmore on July 29, 2013.

    b. September 2013 payment, in the sum of $1,448.08, sent via certified mail, return receipt on August 26, 2013 and signed for by a representative of Rushmore on August 29, 2013.

    c. October 2013 payment, in the sum of $1,448.08, sent via certified mail, return receipt on September 26, 2013 and signed for by a representative of Rushmore on September 30, 2013.

    d. November 2013 payment, in the sum of $1,448.08, sent via certified mail, return receipt on October 26, 2013 and signed for by a representative of Rushmore on October 29, 2013.

20. On October 14th, 2013, Rushmore sent a letter to Plaintiff indicating her October 1st, 2013 payment had not yet been received despite the fact the payment was sent on September 30th, 2013. A copy of that letter is attached as Exhibit D.

21. Plaintiff contacted her Bankruptcy Attorney (who is also Plaintiff's counsel in this case) immediately upset because she had made the October payment in September. Upon the advice of counsel, Plaintiff requested a life of loan history.

22. On October 16th, 2013 the Plaintiff received a Customer Activity Statement for October 1st 2012 through October 10th, 2013 which is attached as Exhibit E.

23. The Plaintiff and her Counsel were shocked to review this statement to discover that Rushmore had been applying all of the Plaintiff's Chapter 13 Mortgage payments into a suspense account as well as line items for late charges, property preservation, miscellaneous foreclosure and bankruptcy fees, attorney advances, repayment fees, and corporate advances.

24. The Plaintiff, through Counsel, sent correspondence to Rushmore/US Bank, N.A. as Plaintiff's bankruptcy counsel on or about October 16th, 2013 inquiring as to the fees, costs, etc.

25. On or about October 21st, 2013 the Plaintiff received correspondence from Rushmore indicating her loan was due for the October 1st, 2013 payment which consisted of a net amount due of $1,448.50 consisting of $1,562.10 due plus $50.00 in recoverable corporate advances less $163.60 in unapplied balance.  A copy of this statement is attached as Exhibit F.

26. On October 31st, 2013 the Plaintiff then received correspondence her loan was due for her *November 1st, 2013* payment including late charges of $114.02, a suspense balance of $163.60, and corporate advances due that were included in the Joint Stipulation.

27. From August 2013 to the filing of this lawsuit the Plaintiff has engaged Plaintiff's Counsel in an attempt to remedy this delinquency.

28. In the late summer of 2015 Plaintiff's Counsel contacted Brian D. Flick, Esq., Pro Hac Vice Counsel for assistance as the negotiations and correspondence with Rushmore had gone in a perpetual loop of frustration and misinformation.  Mr. Flick at both his prior and current firm maintains a considerable practice in litigating Real Estate Settlement Procedures Act cases and Bankruptcy Discharge violations.

29. The Plaintiff employed Attorney Flick in the early September 2015 to assist with the possible litigation.

30. On or about September 8th, 2015 with the Plaintiff's authorization, Attorney Flick tendered a Notice of Error to Rushmore and Request for Information under the Truth in Lending Act to Rushmore.  The Notice of Error is attached as Exhibit G to this Complaint and the TILA payoff request is attached as Exhibit H.

31. Both letters specifically listed the Plaintiff's name, address, loan account number with Rushmore, and were sent to Rushmore's designated Notice of Error and Request for Information address at that time.

32. The Notice of Error specifically stated the following:

    **"In this case, the Consumer-Debtor believes that Rushmore Loan Management Services has misapplied both regular mortgage payments and mortgage arrearage payments tendered by the Debtor and/or the Chapter 13 Trustee David A. Rosenthal through the discharge of the Debtor's Chapter 13 Bankruptcy on August 9$_{th}$, 2013.**

    **Specifically, the Consumer-Debtor believes all payments tendered from January 1$_{st}$, 2013 through September 30$_{th}$, 2014 have not been properly applied to interest, principal, and escrow as required by the terms of the note and mortgage. In addition, the Consumer-Debtor further believes any payments received by Rushmore by the Chapter 13 Trustee have not been properly applied to all pre-petition interest, principal and escrow arrearages on the account."**

33. On or about September 16th, 2015 Attorney Flick received correspondence from Rushmore that they had received the Notice of Error and Request for Information on September 11th, 2015.  A copy of the receipt of the Notice of Error correspondence is attached as Exhibit I.

34. On or about October 23rd, 2015, Attorney Flick received correspondence from Rushmore responding to the Notice of Error.  The response is included as Exhibit J.

35. In its response, Rushmore admits the following:

    a. They conducted an investigation into Plaintiff's Notice of Error and discovered that the account was adjusted for two (2) payments in error when it needed to be adjusted for three (3) payments in error.

    b. Rushmore purportedly adjusted the account for the modification *only as a result of the Notice of Error* and as of October 14th, 2015 there was $2,224.54 in suspense.

7

36. Shortly after sending this response, Rushmore ceased servicing of this loan and as of December 23rd, 2015 SLS began to service the loan again.

### (SLS's Servicing 12/23/2015 through the present)

37. Despite the issues with Rushmore beginning in October 2013, the Plaintiff did in good faith make payment to Rushmore through October 2014.  The Plaintiff did attempt to make payment in November and December 2014 and those payments were returned. Since that time the Plaintiff has tendered her regular contractual monthly mortgage payment of $1,440.48 to Plaintiff's Counsel Kimberly Gilbert, Esq. for deposit in her Trust Account.  As of the date of this filing, there is currently $27,402.87 being held in Trust.

38. In the past 30 days the Plaintiff has again been notified by SLS that they intend to proceed with foreclosure.

39. The Plaintiff lives in constant fear of losing her home.  The Plaintiff believes there is absolutely no alternative but to file suit against Rushmore and SLS because the Plaintiff knows that Rushmore engaged in a clear pattern of refusing to accept her mortgage payments and then knowing refused to honor an existing loan modification despite Bankruptcy Court order.  The Plaintiff believes that SLS has inherited the loan with wrongful account and continues to have a general and legitimate concern about the servicing process of her loan with SLS.  Given the foreclosure has been threatened, the Plaintiff's fears that the account delinquency being misstated may be coming to fruition.

40. The Plaintiff wants to keep her home, enforce the loan modification agreement, and ensure her timely mortgage payments are applied properly pursuant to contract.  The Plaintiff has suffered actual damages of having to hire counsel, the unknown unapplied funds and improperly assessed fees that appear to be a pattern based on the monthly

mortgage statements and medical expenses of having to seek mental health treatment for the worry about losing her home.   The Plaintiff has also suffered and continues to suffer from the stress, anxiety, and frustration of having to deal with these issues.

## CLAIM I: REAL ESTATE SETTLEMENT PROCEDURES ACT - RUSHMORE

**(Failure to Properly Respond to Errors Notices Pursuant to 12 CFR §1024.35(b)(11))**

41. The Plaintiff reincorporate all allegations contained in the preceding paragraphs as if fully contained herein.

42. Rushmore was a servicer of a "federally related mortgage loan" as that term is defined by RESPA.

43. As stated above and as contained in Exhibit G, the Plaintiff, through Attorney Flick, sent correspondence to Rushmore containing the Plaintiff's name, address, full account number, and specific errors to address.

44. 12 C.F.R. 1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or "[c]onducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance" (emphasis added).

45. 12 C.F.R. §1024.35(e)(3)(i)(C) provides that, in regards to a notice of error submitted pursuant to 12 C.F.R. §1024.35(b)(9) a servicer must comply with 12 C.F.R.

9

§1024.35(e)(1) no later than thirty (30) days, excluding legal public holidays, Saturdays, and Sundays, after the servicer's receipt of the applicable notice of error.

46. Plaintiff's Notice of Error letter was sent on September 8th, 2015 and acknowledged as received by Rushmore on September 11th, 2015. *See Exhibit I.*

47. Rushmore's Reply on October 23th, 2015 was made on the 29th day possible under RESPA.

48. Rushmore's reply admitted that was one error in calculations but also admitted there was $2,224.54 in a suspense account.

49. Rushmore's responses fail to provide any evidence that Rushmore conducted a full investigation as the Plaintiff clearly questioned both the maintenance of any suspense account as well as the existence of the loan modification as far back as 2012.

50. Rushmore is a semi-skilled creditor who was an active party to the Chapter 13 Bankruptcy of the Plaintiff.

51. Rushmore is a semi-skilled creditor who had possessed the baseline knowledge to know during the pendency of the Chapter 13 Petition how to apply the regular mortgage payments from the Chapter 13 Trustee to the account.

52. Rushmore's actions in failing to acknowledge all errors raised in Plaintiff's Notice of Error, in failing to correct the errors alleged in the Notice of Error, and in affirmative admitting some of the errors raised in the Notice of Error constitute a violation of 12 U.S.C. § 1024.35(e).

53. Rushmore's actions contained within the Complaints and Exhibits are believed to be and demonstrated to be a pattern and practice of behavior in clear disregard to Plaintiff's rights.

54. As a result of Rushmore's actions, Rushmore is liable to the Plaintiff for actual damages, statutory damages, costs and attorneys' fees.

## CLAIM II: BREACH OF CONTRACT - RUSHMORE

55. The Plaintiff reincorporates all allegations as if fully contained herein.

56. At all relevant times of servicing, the Plaintiff and Rushmore had a binding contract since Rushmore was the servicer of Plaintiff's Mortgage loan from at least September 2012 through December 23rd, 2015.

57. Pursuant to the Note and Mortgage, Rushmore had a duty to apply contractually made payments by the Plaintiff, or through the Plaintiff's authorized agent – the Chapter 13 Trustee – to Interest, Principal, and Escrow Balances.

58. As a servicer of Plaintiff's Mortgage Loan, Rushmore was also subject to the Joint Stipulation and Loan Modification approved during the Chapter 13 Bankruptcy.

59. Based on the Joint Stipulation, the Plaintiff's Mortgage Payment as of November 1st, 2012 was $1,448.08 consisting of payments due on the Principal, Interest, and Escrow.

60. Based on the allegations above, Rushmore refused to timely process the Plaintiff's October 2014 payment despite acknowledgement of receipt.  Rushmore further admitted as of October 14th, 2015 that they maintained a suspense account in the amount of $2,224.54 and did not properly account for the loan modification.

61. Rushmore has breached the mortgage contract.  The breach is one of bad faith based on the allegations contained above and admitted by Rushmore.  Rushmore during their period of servicing intentionally misapplied Plaintiff's payments, ignored a loan modification, and maintained an improper suspense account.

62. Rushmore's breach of contract caused the Plaintiff the economic damage of having to hire counsel since October 2013 to try and seek proper enforcement of the loan modification, discover the source of why Rushmore would not accept payments, and take affirmative steps to try and resolve the differences between the parties prior to the servicing transfer.  The Plaintiff has also suffered the economic damage of at least $2,224.54 in suspense funds that have never been applied.  The Plaintiff has continued to suffer damages for distress, fear of

losing her home, and the mental anguish of now having to re-hash the entire issue with the modification with a new servicer, SLS.

63. The Plaintiff is therefore entitled to receive actual damages in a total amount to be determined at trial, her reasonable attorney's fees and costs.

### COUNT III: VIOLATION OF THE BANKRUPTCY STAY AND DISCHARGE - RUSHMORE

64. The Plaintiff reincorporates all allegations contained in the preceding paragraphs as if fully restated herein.

65. There is no dispute based on the allegations above that during the pendency of Debtor's Chapter 13 case and at the time of discharge, Rushmore was servicing Plaintiff's Mortgage Loan.

66. Based upon the allegations above Rushmore has engaged in a clear pattern of violating the automatic stay and discharge order which included but is not limited to:

    a. Maintaining a suspense account from 2012 through August 9th, 2013 for payments tendered by the Chapter 13 Trustee that were funds of the Plaintiff intended to pay post-petition monthly mortgage payments.

    b. Creating inspection fees, advances, late fees, despite receiving regular timely monthly mortgage payments pursuant to 11 U.S.C. § 524(i)

    c. Failing to acknowledge the Joint Stipulation and Mortgage Modification until October 2015 when it retroactively re-aged the account for one failed adjustment

    d. Knowingly sending a statement in October 2013 which contained amounts due in the Chapter 13 that were discharged by virtue of the Notice of Final Cure.

67. As stated above, Rushmore is semi-skilled creditor that knew of its responsibilities under the Bankruptcy Code.

68. The actions of Rushmore alleged above are a clear pattern of intentional misrepresentations to the Plaintiff and her Counsel to contradict the rights afforded to the Plaintiff under the Automatic Stay and the Discharge Order.

69. Rushmore violated the Automatic Stay.

70. Rushmore violated the Discharge Order.

71. Rushmore's violations of both orders are clearly demonstrated by a pattern and practice described above.  In order to maintain and protect the integrity of the Bankruptcy Code this Court should find Rushmore violated both the Stay and Discharge and award the Plaintiff actual damages, attorney's fees and costs, and punitive damages under 11 U.S.C. § 105.

### COUNT IV: CONVERSION - RUSHMORE

72. The Plaintiff reincorporates all allegations contained in the preceding paragraphs as if fully restated herein.

73. Based on the allegations and admissions by Rushmore above, Rushmore knowingly maintained a suspense account as late of October 14th, 2015 in the amount of $2,224.54.

74. As stated in Exhibits D and E, Rushmore maintained a suspense/unapplied funds account as early as September 2013 and began to apply Plaintiff's money that was earmarked for contractual monthly payments to suspense, began to charge late fees, and began to create corporate advances even though the payments were made timely each month.  These actions caused the Plaintiff to fall behind and when she attempted to remedy the situation in October/November 2013, it fell on deaf ears.

75. When the Plaintiff tendered monthly payments to Rushmore, she did not relinquish the right to her money.   Her ownership interest remained intact until the money was tendered to the owner of the Note and Mortgage, U.S. Bank, N.A. as Trustee.

76. Rushmore was required to apply Plaintiff's payments in a certain manner under the Note and Mortgage, under the Joint Stipulation/Loan Modification, and at times relevant therein under the Bankruptcy Code. Rushmore based on the allegations and exhibits above converted Plaintiff's money of at least $2,224.54 by demanding incorrect amounts, misapplying payments, creating improper charges, and applying the money toward balances not owed.

77. Rushmore's conversion of Plaintiff's money caused actual out-of-pocket damages for having to hire counsel back in 2013 to the present to uphold her discharge, enforce the loan modification, to try and resolve what money that was tendered by the Plaintiff but never applied to the account. This conversion also caused non-economic damages for the inability to have the loan balance be accurate. The Plaintiff is entitled to an award of punitive damages due to the actions of Rushmore.

## COUNT V: BREACH OF CONTRACT - SLS

78. The Plaintiff reincorporates all allegations as if fully contained herein.

79. At all times relevant since December 23rd, 2015, the Plaintiff and SLS have had a binding contract since SLS is the servicer of Plaintiff's mortgage loan.

80. Pursuant to the Note and Mortgage, SLS had a duty to apply contractually made payments to the Plaintiff or through the Plaintiff's authorized agent to interest, principal and escrow balances.

81. While the Plaintiff does not dispute that she has been delinquent since the time SLS resumed servicing, SLS did have a duty when it began servicing the loan again to ensure all payments were timely applied.

82. Based on the allegations above the Plaintiff has every reason to belief that SLS maintains the same suspense account. In the event SLS has a suspense balance, then they have breached the mortgage contract.

83. The Plaintiff is therefore entitled to receive actual damages in a total amount to be determined at trial, her reasonable attorney's fees and costs.

## Trial By Jury

84. Plaintiffs are entitled to and hereby respectfully request a trial by jury on each and every matter so entitled.  US Const. Amend. 7.

## Prayer for Relief

**WHEREFORE,** Plaintiff having set forth their claims for relief against Defendants Rushmore and SLS respectfully pray of this Court as follows:

A. That the Plaintiff have and recover against the Defendants a sum to be determined by the Court in the form of statutory damages;

B. That the Plaintiff have and recover against the Defendants a sum to be determined by the Court in the form of actual damages;

C. That the Plaintiff have and recover against the Defendants a sum to be determined by the Court in the form of punitive damages;

D. That the Plaintiff have and recover against the Defendants all reasonable legal fees and expenses incurred by their attorney; and

E. Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Kimberly A. Wright
Kimberly A. Wright, Esq.
Kimberly A. Gilbert, Attorney at Law P.C.
100 Executive Drive, Suite E
Lafayette, IN 47905
(765) 742-7259
(765) 446-2684 fax
kaglawpc@gmail.com
*Local Counsel for Plaintiff*

/s/Brian D. Flick, Esq.
Brian D. Flick, Esq. #0081605

        The Dann Law Firm
        PO Box 6031040
        Cleveland, Ohio 44103
        (216) 373-0539
        (216) 373-0536 e-fax
        bflick@dannlaw.com
        notices@dannlaw.com
        *Pro Hac Vice Counsel for Plaintiff- Application Pending*